United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO RODRIGUEZ,<br><br>Defendant. | Case No. 17-cr-00021-WHO-1<br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 49 |

## INTRODUCTION

I am disturbed by the Bureau of Prison's ("BOP") decision-making concerning and treatment of defendant Antonio Rodriguez, a paraplegic whom I sentenced on August 10, 2017. The BOP originally sent him (after many interim stops) to FCI Allenwood, which apparently could not provide the assisted physical therapy his medical records demonstrated that he needed. When the BOP recognized its error, it inexplicably transferred him to a Medical Facility (FMC Devens) where he could not be placed in the general population, necessitating his placement in a segregated housing unit ("the SHU"). Faced with the deterioration of his mental health, an even more serious risk than the BOP's continued inability to maintain his physical health, Rodriguez signed a waiver refusing medical services in order to transfer out of the SHU and FMC Devens. The BOP shipped him back to FCI Allenwood, failed to provide the medical services it previously concluded he needed, and now claims that those services are no longer necessary.[1]

As a result of the BOP's mind-boggling conduct, Rodriguez seeks compassionate release

---

[1] The government relies on medical records after January 2019, when Rodriguez signed a waiver refusing medical services, to support its argument that Rodriguez does not need physical therapy services. I view these records with skepticism because they are remarkably inconsistent with medical records prior to January 2019.

due to his declining physical condition, difficulty taking care of himself in prison, and the BOP's demonstrated inability or unwillingness to provide him with the physical therapy and medical care that he needs.

The present medical record does not establish that the severity of the deterioration of his physical condition alone warrants granting Rodriguez's motion. He argues, in the alternative, that the totality of circumstances support a finding of "extraordinary and compelling reasons" to grant relief.

If Rodriguez was not coming to a nearby Residential Reentry Center ("RRC"") on January 14, 2020, where the government has promised that he will receive the services he has been requesting, I would likely grant the motion. However, my concern about Rodriguez's welfare is balanced by my desire that he serve the sentence that I imposed. The record of his current physical health is confused in light of a recent evaluation at the BOP that contradicts the earlier ones. Because of the representation of the government that Rodriguez will receive assisted physical therapy services and necessary medical equipment (such as a standing frame) while at the RRC, and the short time between now and his arrival at the RRC, I will deny the motion without prejudice. But should the representations regarding services at the RRC prove untrue, I may *sua sponte* grant the requested relief. Given the record in this case, and to ensure that Rodriguez is receiving the services he needs, a Status Conference is scheduled for January 30, 2020, at 1:30 p.m. I direct that Probation Officer Gerstel file a written report by January 23, 2020, informing me and the parties whether the RRC is providing the promised services.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

On September 5, 2019, Rodriguez filed a motion for compassionate release pursuant to the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A)(i). Motion for Compassionate Release ("Mot.") [Dkt. No. 49] 1. Rodriguez requests that I resentence him to home-confinement due to his declining physical condition, difficulty taking care of himself in prison, and the BOP's demonstrated inability or unwillingness to provide him with the physical therapy and medical care that he needs. *Id.*

### A. Medical Condition Before Incarceration

In 2010, Rodriguez suffered rib, spine and sternal fractures due to gunshot wounds. Declaration of David Rizk in Support of Motion for Compassionate Release ("Rizk Decl.") [Dkt. No. 50], Ex. C (October 2011 medical record from Kaiser primary care physician). He also suffered a spinal cord severance, rendering him paraplegic. *Id.* Medical care providers who examined him in the years prior to his incarceration found that Rodriguez requires "help from a caregiver for most of his day to day needs." *Id.*; *see also* Rizk Decl., Ex. D (July 2012 medical record from Kaiser Spinal Cord Wellness Clinic recommending daily use of a standing frame and exercise with the assistance of a physical therapist); Ex. E (February 2013 correspondence from Rodriguez's physical therapist recommending the same); Ex. F (April 2013 medical record from Kaiser Spinal Cord Wellness Clinic noting Rodriguez was receiving assistance from his brother to complete his exercises); Ex. G (January 2015 medical record from Kaiser recommending continued physical therapy); Ex. H (December 2015 medical record from Kaiser noting improvements following one year of therapy). In particular, Rodriguez's doctor recommended physical therapy to mitigate the tightness and spasticity in his legs. Rizk Decl., Ex. I (February 2016 medical record from Kaiser). Rodriguez's brother confirms that he was aiding his brother twice daily with exercises, stretches, and transfers to a standing frame up until the point when Rodriguez went into federal custody. Mot. 5; *see* Declaration of Anthony Rodriguez in Support of Motion for Compassionate Release [Dkt. No. 51], ¶ 5.

On January 12, 2017, Rodriguez was charged with one count of violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. Indictment [Dkt. No. 1]. He violated the conditions of his pre-trial release with a second firearms violation as well as a failed drug test. Presentence Report [Dkt. No. 35] ¶ 4. He pleaded guilty. On August 10, 2017, I sentenced Rodriguez to 41 months in prison followed by three years of supervised release. Judgment [Dkt. No. 39]. Rodriguez was committed to BOP custody on December 22, 2017. His current statutory release date is projected to be July 29, 2020 and his expiration of full term date is projected to be January 6, 2021. Rizk Decl., Ex. K.

**B.     Transfer from FCI Allenwood to FMC Devens for Physical Therapy Services**

Rodriguez has been moved multiple times while in BOP custody. Mot. 6. Following sentencing, he was transferred to Santa Rita County Jail on September 14, 2017, Nevada Southern Detention Center on November 15, 2017, FTC Oklahoma City on November 30, 2017, FCI El Reno Oklahoma City on December 22, 2017, back to FTC Oklahoma City on February 24, 2018, FCI Allenwood on March 12, 2018, FMC Devens on December 6, 2018, and back to FCI Allenwood on March 12, 2019, where he remains now. Mot. 6; Rizk Decl., Ex. A (compassionate release request sent on January 30, 2019 detailing his multiple transfers while in BOP custody).

Rodriguez claims that starting in late 2017 and continuing through 2018 and 2019, he submitted numerous requests for access to physical therapy services, but BOP rejected his requests. Mot. 6; Rizk Decl., Ex. M (compilation of inmate request forms sent by Rodriguez). Rodriguez cites numerous medical records from BOP as evidence that he was not given the physical therapy services prescribed to him. Mot 6 –7.

On August 8, 2018, an independent therapist not associated with BOP, Susan Andrews, evaluated Rodriguez. She noted that he can improve his mobility if "he is provided the opportunity for hands on and skilled rehab services (vs. independent exercise and rehab activities without the assistance or input of trained, skilled therapist)." Rizk Decl., Ex. N. Ms. Andrews further noted that "hands-on rehab cannot be done in the FCI Allenwood setting," and "as such, incarceration in a setting where these services are readily available might offer him the access to these services and ultimately increased mobility." *Id.*[2] On August 22, 2018, BOP acknowledged the recommendation to have him moved to a facility with physical therapy services. Mot. 7; Rizk Decl., Ex. O (BOP Health Services administrative note stating that BOP "[w]ill inquire about this as a possibility").

Two months later, on October 24, 2018, Rodriguez was examined by an independent

---

[2] On November 5, 2019, Ms. Andrews conducted a second evaluation which facially contradicts to her first evaluation. *See* Second Supplemental Brief in Opposition [Dkt. No. 78]. As I said at the November 7, 2019 hearing, this second evaluation does not hold much weight given the inconsistencies.

4

doctor of osteopathy, Dr. Melissa Michaluk, who recommended that Rodriguez have "ample access to therapeutic equipment, a standing frame, wheelchair vendors, and a gym." Rizk Decl., Ex. P. Dr. Michaluk concluded that if he "could have access to these services, his risk of worsening spasticity, nerve pain, and permanent loss of ability to stand would decrease significantly." *Id.* Citing this evaluation, BOP approved his transfer to a medical facility on November 16, 2018. *Id.*, Ex. Q. On December 6, 2018, Rodriguez was transferred to FMC Devens; the BOP transfer form indicates the reason for transfer as "Hospitalization and Treatment." *Id.*, Ex. R (BOP Transfer Form); *id.*, Ex. S (BOP Inmate Activity Form). BOP officials at FMC Devens determined that Rodriguez required a "care level" of 4, which means he "requires daily or nearly daily nursing interventions." *Id.*, Ex. T; *see also id.*, Ex. U (BOP Medical Classification Algorithm for Medical/Psychiatric Conditions or Disabilities).

### C. SHU Confinement at FMC Devens and January 2019 Waiver Refusing Medical Treatment

Upon his arrival at FMC Devens, BOP placed Rodriguez in the SHU because FMC Devens was "dominated by MS-13 and the Sureños, meaning that Rodriguez was not safe in the general inmate population." Mot. 8; Rizk Decl., Ex. V ("Due to security reasons, Inmate Rodriguez has been housed in the SHU since his arrival."). Rodriguez argues that instead of finding a different medical facility, BOP put him in the SHU, where he was "confined for 23 hours a day," and only had "limited access to email, telephone calls, recreation time, and visitation." Mot. 8.

Rodriguez "begged to be moved out of the SHU," requesting BOP staff to lower his care level to 3 or 2 so that he could get out of the SHU. Mot. 8; Rizk Decl., Ex. W. On January 2, 2019, he wrote: "It makes no sense having me at a medical center if I'm not able to be on the compound. There is no medical center in the BOP I can be at . . . so I think it's best to just lower my care level to a 3 or 2 and send me back to FCI Allenwood which is a care level 3." Rizk Decl., Ex. W. He added, "It's unhealthy to keep me back here in my mental state of mind for no reason. It's clearly a form of abuse and neglect. I'm not in trouble, so I should not have to be treated like I am." *Id.*

Rodriguez alleges that on January 4, 2019, BOP persuaded him to sign a waiver of

5

physical therapy services in order to leave the SHU and FMC Devens. Rizk Decl., Ex. W; Mot. 8. The waiver form, titled "Medical Treatment Refusal," required Rodriguez to acknowledge that if he refuses treatment recommended by the BOP Medical staff, defined as "physical therapy for rehabilitation," then he could suffer "continued degeneration of muscles and breakdown of skin, increase in falls and sequelae." *Id.*

### D. Inconsistent BOP Records After January 2019

The BOP documents subsequent to the January 4, 2019 waiver are inconsistent with the prior medical record, raising questions concerning their reliability. On January 8, 2019, a BOP medical examiner noted that Rodriguez signed a physical therapy waiver and expressed his frustration of being confined in the SHU. Rizk Decl., Ex. X. On January 16, 2019, a BOP staff member noted that Rodriguez "was sent to FMC Devens for PT eval[ulation] and assessment for possible PT and rehab[ilitation] from his spinal injury." Declaration of Ryan Parkyn in Support of Opposition ("Parkyn Decl.") [Dkt. No. 58], Ex. F. On January 17, 2019, a BOP medical document states that Rodriguez "was evaluated by Physical Therapy on January 16, 2019" and concluded that their assessment "revealed that the patient is completely independent with all [activities of daily living]" and that there is "no indication for PT given his absent prognosis for returning to functional ambulation." Rizk Decl., Ex. V. Rodriguez argues that these documents should not be given much weight given that it was only days after Rodriguez "was coerced into signing the physical therapy waiver." Mot. 9.

Rodriguez also argues that these January 2019 documents are inconsistent with the medical documents prior to his transfer to FMC Devens. Mot. 9–10; *see* Rizk Decl., Ex. P (October 24, 2018 independent doctor suggesting access to standing frame); Ex. N (August 8, 2018 independent physical therapist suggesting "hands on and skilled rehab services (vs. independent exercise and rehab activities without the assistance or input of trained, skilled therapist)"); Ex. O (August 22, 2018 BOP medical staff recommending "transfer to a medical facility where these services would be readily available and ultimately increase mobility").

### E. Transfer Back to FCI Allenwood and Request for Compassionate Release

On March 12, 2019, Rodriguez was transferred from FMC Devens to FCI Allenwood.

Rizk Decl., Ex. B. An internal BOP medical record noted that Rodriguez is at risk for skin breakdowns. *Id.*, Ex. Y. After moving back to FCI Allenwood, Rodriguez submitted a request for compassionate release to the prison administration. Rizk Decl., Ex. B. On April 2, 2019, the warden denied the request and stated that Rodriguez did not meet the "Debilitated Medical Condition" which she defined, citing to BOP Program Statement 5050.50, as: "Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." *Id.*, Ex. B and Ex. Z. According to the warden, "the Health Services personnel have confirmed that though you are a paraplegic, you continue to independently perform activities of daily living." *Id.*, Ex. B.

### F. Third Independent Medical Expert Confirms Rodriguez Needs Physical Therapy

The defense retained, and I authorized, Dr. Thomas DiBenedetto to provide a professional opinion concerning Rodriguez's condition and care. Mot. 10; Order Authorizing Medical Examination of Rodriguez [Dkt. No. 48]. Dr. DiBenedetto was provided with Rodriguez's entire medical record from both prior to his incarceration and during BOP custody. Mot. 11. Dr. DiBenedetto's report of July 30, 2019 finds that Rodriguez has developed increasing knee contractures of 10 to 15 degrees in his knees. Rizk Decl., Ex. BB (DiBenedetto Report at 4). Dr. DiBenedetto also finds that Rodriguez is losing range of movement in his ankles. *Id.* He concludes that while Rodriguez's condition is permanent, the absence of physical therapy assistance will increasingly limit his ability to complete the most basic daily activities. *Id.* at 8. Specifically, he recommends that Rodriguez "should be under the care of a Board Certified Physiatrist with specialty training in a spinal cord injury," who can provide "supervision of a medication regimen to control spasticity and if need be to prescribe various devices to prevent contracture and to do a comprehensive home exercise program." *Id.* at 9.

Rodriguez argues that Dr. DiBenedetto's recommendations are consistent with prior independent care providers who also recommended assisted physical therapy services. Mot. 12. Dr. DiBenedetto's conclusion is also, notably, consistent with the BOP waiver that acknowledges

that, in the absence of physical therapy, "continued degeneration of muscles and breakdown of skin, increase in falls and sequelae." Rizk Decl., Ex. W (medical treatment refusal waiver); Mot. 12.

## II. PROCEDURAL HISTORY

### A. Motion for Compassionate Release

On September 5, 2019, Rodriguez filed a motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). *See* Mot. Rodriguez does not challenge the validity of the sentence originally imposed, but rather seeks a reduction in his sentence given the "extraordinary and compelling" reason that BOP has not, and possibly cannot, provide him the requisite physical therapy he needs. *Id.* The government opposed the motion on several grounds. Opposition ("Oppo.") [Dkt. No. 57]. The first hearing was held on October 10, 2019. Dkt. No. 69. Given the complexity of the issues and the muddled factual record, I continued the hearing and directed the parties to file supplemental briefing.

### B. Supplemental Briefing

On October 21, 2019, U.S. Probation Officer Alex Gerstel reported that Rodriguez had been approved to transfer to a RRC on January 14, 2020. In its supplemental opposition, the government continued to argue that Rodriguez does not require assisted physical therapy, and additionally argues that the court does not have authority to consider "other compelling reasons" for compassionate release outside of those defined by the Sentencing Commission. Government Supplemental Opposition [Dkt. No. 71] 1–3.

In his supplemental reply, Rodriguez argues that there is no reason to further delay his medical care given BOP's refusal to change its position, and that the court has authority to consider "other compelling reasons" for compassionate release. Rodriguez Supplemental Reply [Dkt. No. 74] 1. A continued hearing occurred on October 31, 2019 and November 7, 2019.

## LEGAL STANDARD

In 2018, Congress passed the First Step Act ("FSA"). First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The statute amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration. Cong. Research Serv.,

8

R45558, The First Step Act of 2018: An Overview 1 (2019). Relevant here, the FSA amended the procedures by which defendants can seek sentence reductions through compassionate release. Under the old regime, a defendant could only petition the BOP Director for compassionate release, who could then make a motion, at her discretion, to a district court. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."). The BOP Director rarely did so. *See* Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice).

The FSA allows defendants, for the first time, to petition district courts directly for compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

## DISCUSSION

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A court may reduce a term of imprisonment on a motion from a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A defendant who has not "requested compassionate release from the [Bureau of Prisons] or otherwise exhausted his administrative remedies" is not entitled to a reduction of his term of imprisonment. *United States v. Solis*, No. 16-CR-015-CG-MU, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019).

Here, Rodriguez filed an administrative request for compassionate release to the warden at

1 FCI Allenwood on March 21, 2019.[3] Parkyn Decl., Ex. B. The court gained jurisdiction in the lapse of thirty days, *i.e.*, April 20. 2019. Rodriguez filed his motion for compassionate release on September 5, 2019. *See* Mot. Rodriguez has met the threshold requirement of administrative exhaustion as set forth in 18 U.S.C. § 3582(c)(1)(A).[4]

## II. EXTRAORDINARY AND COMPELLING REASON

18 U.S.C. § 3582(c) provides a path for defendants in "extraordinary and compelling circumstances" to be released from prison early. 18 U.S.C. § 3582(c)(1)(A). Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission." *Id.* Congress has not defined what constitutes "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the statute directs the Sentencing Commission to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Before the FSA's passage, the Commission concluded "extraordinary and compelling reasons" are limited to four scenarios. Included among them are a defendant's medical condition (Subdivision (A)), health and age together (Subdivision (B)), and family circumstances (Subdivision (C)). U.S.S.G. § 1B1.13, cmt. n .1(A)–(C). The "medical condition" scenario under Subdivision (A) describes a defendant who suffers from a "terminal illness" or a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

---

[3] Rodriguez also filed administrative requests for compassionate release on April 10, 2018, August 22, 2018, and January 30, 2019. *See* Rizk Decl., Exs. A and M; Parkyn Decl., Ex. I.

[4] The government also argued that Rodriguez had waived his right to seek compassionate release under 18 U.S.C. § 3582 in his plea agreement. Oppo. 5. This argument was not at all well taken. Waiver is the relinquishment of a known right. The First Step Act amended Section 3582 and was passed after his sentence, so he could not have waived the rights it contains. In particular, a waiver of rights under Section 3582 is enforceable if "(1) the language of the waiver encompasses the relief sought, and (2) the waiver is knowingly and voluntarily made." *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009). His waiver could not have encompassed the relief sought under the newly amended Section 3582, nor could he have knowingly waived rights that were not in existence, or even contemplated, at the time of his plea. Moreover, he could not have thought, and I absolutely did not think, that the BOP would decide that the only way to treat his demonstrated medical condition was to house him in a SHU. No inmate waives the right to be treated properly by the BOP in a plea agreement.

U.S.S.G. § 1B1.13 cmt. n.1(A).

The Sentencing Commission also provided a catch-all provision under Subdivision (D) that allows the BOP Director to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in Subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). However, the Sentencing Commission "never harmonized its policy statements with the FSA." *United States v. Brown*, No. 4:05-CR-00227-1, 2019 WL 4942051, at *2 (S.D. Iowa Oct. 8, 2019). Rather, the outdated policy statements still assume compassionate release "may by granted only upon motion by the Director of the Bureau of Prisons." *Id.* (quoting U.S.S.G. § 1B1.13 cmt. n.4). Because this is no longer the law with the First Step Act, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id.* (describing that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, but the Commission "has not made the policy statements for the old regime applicable to the new one").

This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant compassionate release. *See, e.g.*, *Brown*, 2019 WL 4942051, at *2; *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). Congress knew that the BOP rarely granted compassionate release petitions, and the purpose of the FSA was to allow defendants to file motions in district courts directly even after the BOP Director denies their petition. *Brown*, 2019 WL 4942051, at *3. "[T]he only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling'." *Id.* (internal citation and quotation marks omitted).

Rodriguez seeks compassionate release under the "medical condition" scenario in Subdivision (A), or alternatively, under the "other reasons" catch-all provision in Subdivision (D).

11

### A. Medical Condition Reason

Rodriguez argues that he satisfies the "medical condition" reason for compassionate release in Subdivision (A) because he is "suffering from a physical or medical condition" that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility" and from which "he [] is not able to recover." Mot. 14 (quoting U.S.S.G. § 1B1.13, n.1(A)).

The government contends that Rodriguez does not satisfy the "medical condition" requirement. It cites to post-January 2019 documents in his medical record to show that he did not need assisted physical therapy and that he was capable of independently performing activities of daily living. Oppo. 8. However, as emphasized above, the BOP documents subsequent to the January 4, 2019 waiver Rodriguez signed in the SHU are inconsistent with the prior record and therefore do not hold much weight.

Nevertheless, viewed through the lens of Dr. DiBenedetto's and the earlier records, Rodriguez's situation, while troubling, does not show the severity of deterioration in his "medical condition" that courts have required for compassionate release. *See, e.g.*, *United States v. Bellamy*, No. 15-CV-1658-JRT-LIB, 2019 WL 3340699, at *3 (D. Minn. July 25, 2019) (granting compassionate release to 71 year-old wheelchair bound defendant who had heart problems, and suffered from diabetic kidney disease, among other conditions); *United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019) (granting compassionate release to wheelchair bound and blind defendant who required 24/7 care and had an estimated eighteen months to live); *United States v. Gray*, No. 2:02-CR-00018-JMS-CMM-13, 2019 WL 4572816, at *5 (S.D. Ind. Sept. 20, 2019) (granting compassionate release to 64-year old defendant who had been hospitalized for multiple procedures, including chemoembolization of a liver tumor); *United States v. Gasich*, No. 2:14-CR-63, 2019 WL 4261614, at *1 (N.D. Ind. Sept. 9, 2019) (granting compassionate release for defendant who had an estimated four months to live). At least on this record, Rodriguez has not satisfied the "medical condition" reason for compassionate release.

### B. Other Extraordinary and Compelling Reasons

Only a few cases have been decided since the passage of the First Step Act where district

courts have considered other compelling reasons under Subdivision (D). In *United States v. Beck*, the court granted compassionate release under Subdivision (D) to a defendant who established that BOP's delays in her medical treatment for breast cancer increased the risk that her cancer spreads. No. 1:13-CR-186-6, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019). The court found that BOP's "gross mismanagement of medical care for an inmate's deadly disease is extraordinary," and concluded that "a compelling reason exists when BOP appears unable to provide [medical care] without court oversight." *Id.*

The record here shows that BOP mishandled Rodriguez's case in an extraordinary way, repeatedly neglecting to provide him with the services that he needs unless he agreed to housing in the SHU at FMC Devens. This is indefensible. But while this motion was pending, Rodriguez's transfer to the RRC was confirmed to be in January instead of July 2020, as originally feared by Rodriguez, and the government committed to providing the services at the RRC that Rodriguez has sought. My choice is either to enforce the government's promises or to hold further evidentiary hearings given the contradictory medical records created by the BOP.[5] Since the latter will take some time and not speed up Rodriguez's receipt of the services he desires, I choose the former.

At the November 7, 2019 hearing, U.S. Probation Officer Alex Gerstel stated after investigation that he had been informed that Rodriguez would have access to physical therapy and other required services at the RRC. Gerstel also stated that he could assist the court in determining whether Rodriguez is receiving the promised care at the RRC, but noted that the Probation Office has no jurisdiction to control the provision of services and care by the BOP while Rodriguez resides at the RCC under a custodial sentence. *Id.* To give the Court the authority to direct Rodriguez's medical care, defense counsel suggests that I resentence Rodriguez now "to a term of supervised release, with the condition that it be spent in the RRC from now until his home confinement eligibility date on March 5, 2020; and thereafter, to be spent on home confinement

---

[5] Defense counsel's unforgettable suggestion at the hearing on November 7, 2019 that I "do the courageous thing" and bring his client home is legally unsupportable on this record and is inconsistent with the sentence that I imposed.

13

until his current custodial release date of July 6, 2020; and thereafter followed by three years of supervised release under all of the same conditions previously imposed by the Court." November 8, 2019 Letter from David Rizk [Dkt. No. 81].

I choose instead to take the government at its word. If it does what has been represented to me, there is no compelling reason to resentence Rodriguez. Given the record in this case, and to ensure that Rodriguez receives the services he needs at the RRC, a Status Conference is scheduled for January 30, 2020 to review compliance.

## CONCLUSION

Rodriguez's motion for compassionate release is DENIED without prejudice. A Status Conference is scheduled for January 30, 2020. I direct that Probation Officer Gerstel file a written report by January 23, 2020, informing me and the parties whether the RRC is providing the promised services.

**IT IS SO ORDERED.** Dated:

November 25, 2019

William H. Orrick
United States District Judge

14